IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Corinthian Colleges, Inc. d/b/a
Everest College f/k/a Olympia College,

    Petitioner,

v.

Sheri McCague, on behalf of herself
and all others similarly situated,

    Respondent.

_____/

## PETITION TO VACATE ARBITRATION AWARD

Pursuant to 9 U.S.C. § 10(a)(4), Corinthian Colleges, Inc. (the "School") hereby petitions this Court to vacate a May 11, 2009 Partial Final Clause Construction Award.

## INTRODUCTION

1.    This case challenges a May 11, 2009 Partial Final Clause Construction Award that erroneously found the arbitration agreement between the School and Respondent to include an agreement to arbitrate a class action. The arbitration agreement is silent on the subject of amenability to class action treatment, although provisions from the agreement demonstrate an express intent *not* to permit class action. Under these circumstances, the Federal Arbitration Act ("FAA") necessarily precludes proceeding as a class. The question raised here of whether silence in an arbitration agreement can qualify as an assent to litigate as a class is settled in the Seventh Circuit. In *Champ v. Siegel Trading Co.*, 55 F.3d 269, 275 (7th Cir. 1995), the court held that mere silence does not permit class treatment. (The U.S. Supreme Court has recently taken up the question to settle a division among circuits.) This goes directly to the arbitrator's

authority under the parties' agreement and the FAA,[1] rather than to any decision on the merits of this lawsuit. In finding authority to decide a class action in an agreement that provides for no such authority, the Arbitrator exceeded his authority, and the award should be vacated.

## THE PARTIES

2. The School is a California corporation with its principal place of business in California.

3. Respondent is upon information and belief a citizen of Cook County, Illinois.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1332 because the School and Respondent are citizens of different states and therefore there is complete diversity. Respondent seeks compensatory damages, punitive damages, and attorney's fees in her Statement of Claim, among other relief. Respondent has alleged violations of the Illinois Consumer Fraud & Deceptive Business Practices Act (815 ILCS § 505/1, et seq.), which provides a right to recover punitive damages, and the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510/1 et seq.), which provides for the potential recovery of attorney's fees. The amount in controversy with respect to Respondent's claim thus exceeds the sum or value of $75,000, exclusive of interest and costs.

---

[1] *See* David S. Clancy and Matthew M.K. Stein, "An Uninvited Guest: Class Arbitration and the Federal Arbitration Act's Legislative History, *The Business Lawyer*, Vol. 63, 55-79 (November 2007). Clancy and Stein examine the legislative history of the Federal Arbitration Act and argue that class arbitration is fundamentally incompatible with the FAA. The authors argue that class arbitration is a novel type of non-judicial dispute resolution neither reviewed nor approved by Congress, and that, as a result, this "uninvited guest" should be subjected to close scrutiny. The authors also identify multiple problems in class arbitration including judicial review of class arbitration decisions under a traditional standard of review that is highly deferential to arbitrators, the effect of which is the quiet establishment of a forum that adjudicates disputes involving hundreds, thousands, or even tens of thousands of individuals in decisions that are effectively unreviewable.

5.      Venue is appropriate pursuant to 28 U.S.C. § 1391 as Respondent resides in the judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## BACKGROUND

6.      Respondent enrolled in a Dental Assisting Program in March 2006 offered by a campus in Burr Ridge, Illinois.

7.      Respondent signed an Enrollment Agreement, Ex. A hereto. The Enrollment Agreement provides, in pertinent part:

> AGREEMENT TO BINDING ARBITRATION AND WAIVER OF JURY TRIAL
> The student agrees that any dispute arising from my enrollment at Olympia College, no matter how described, pleaded or styled, shall be resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association ("AAA") under its Commercial Rules. The award rendered by the arbitrator may be entered in any court having jurisdiction.
>
> Terms of Arbitration
> Both student and Olympia College irrevocably agree that any dispute between them shall be submitted to Arbitration.
> Neither the student nor Olympia College shall file or maintain any lawsuit in any court against the other, and agree that any suit filed in violation of this Agreement shall be dismissed by the court in favor of an arbitration conducted pursuant to this Agreement. The costs of the arbitration filing fee, arbitrator's compensation and facilities fees will be paid by Olympia College, to the extent these fees are greater than a Superior Court filing fee.
> The arbitrator's decision shall be set forth in writing and shall set forth the essential findings and conclusions upon which the decision is based.
> Any remedy available from a court under the law shall be available in the arbitration.
> Nothing in this Agreement prohibits the student from filing a complaint with the state regulatory agency.
> Procedure for Filing An Arbitration
>
> 1.      Students are strongly encouraged, but not required, to utilize the Grievance Procedure described in the Catalog, prior to filing an arbitration.
>
> 2.      A student desiring to file an arbitration should first contact the Olympia College President, who will provide the student with a copy of the AAA Commercial Rules. A student desiring to file an Arbitration should then contact the American Arbitration

3

Association which will provide the appropriate forms and detailed instructions. The student should bring this form to AAA.

A student may, but need not, be represented by an attorney at the Arbitration.

...

Acknowledgment of Waiver of Jury Trial and Availability of AAA Rules
(See Agreement to Binding Arbitration and Waiver of Jury Trial on reverse side.)

By my signature below, I acknowledge that I understand that both I and Olympia College are irrevocably waiving rights to a trial by jury, and are selecting instead to submit any and all claims to the decision of an arbitrator instead of a court. I understand that the award of the arbitrator will be binding, and not merely advisory. I also acknowledge that I may at any time, before or after my admission, obtain a copy of the Rules of the American Arbitration Association, at no cost, from the Olympia College President.

8. In June 2008, Respondent filed a Demand for Arbitration in the American Arbitration Association ("AAA") on behalf of herself "and all others similarly situated." Respondent alleged the School supposedly made misrepresentations in connection with the enrollment. Many of Respondent's contentions of "misrepresentations" were in fact refuted by admissions she had made under oath.

9. Notwithstanding, Respondent sought to proceed as a putative class action arbitration. The School objected, and the Arbitrator asked for briefing.

10. The School argued in its Clause Construction Brief that the Arbitrator had no authority to proceed as a class because the operative agreement expressly contemplates an <u>individualized</u> arbitration between a particular student (in this case, Respondent) and the School. Moreover, federal and state laws governing the confidentiality of student records and information, as well as the absence of any mention of the existing AAA supplemental class rules, are antithetical to any presumed authority to proceed as a class. The School added that students' claims would be large, at least over $10,000, and AAA rules providing for virtually costless

4

arbitrations militated against class treatment, as every student has an efficient, affordable method for vindicating purported claims.

11. Respondent argued that the phrase "any disputes" in the Agreement, along with the Agreement's alleged absence of an express disavowal of class actions, supposedly added up to permission for class treatment. Respondent attempted to rely on the supposed "precedent" of other arbitral awards, and merely denied the School's other arguments that the large size of purported individual claims and the lack of meaningful forum fees precluded class action.

12. The Arbitrator issued his written Partial Clause Construction Award May 11, Ex. B hereto. The Arbitrator properly rejected Claimant's arguments on supposed arbitral precedent and the supposed meaning of "any disputes." (The Arbitrator correctly noted that "disputes" refers to the "pleaded legal grounds upon which the claims are based" and not the procedures such as class actions.) However, the Arbitrator found that individualized terms framing particular disputes between solely "the student" and the School did not restrict class actions. The Arbitrator relied on the U.S. Supreme Court's plurality opinion in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 451 (2003), which construed an agreement that also used terms limiting its application to the "parties" to "this contract." *Bazzle*'s holding boiled down to the narrow finding that the arbitrator, rather than the state court, should have decided the issue, and this merited vacatur of the state court's ruling.[2] *Id.* at 454. The Arbitrator reasoned that "[h]ad the *Bazzle* majority adopted the point that [the School] makes here, there would have been no reason [for the *Bazzle* Court] to refer the matter to the arbitrators for contract interpretation."

---

[2] Actually, four Justices—led by Justice Breyer—concluded that an arbitrator was the correct decision-maker for determining whether the *Bazzle* contract was silent as to or forbade class arbitration, and they gave no opinion as to whether the contract did in fact permit class arbitration. Three Justices—those led by Chief Justice Rehnquist—dissented and reasoned that a court was the correct decision-maker (and that the provision did not allow for class arbitration). Two Justices simply did not reach the issue. Thus, on the substantive issue in *Bazzle*—whether the arbitration provision allowed for class arbitration—there was no majority opinion. This leaves intact the pre-*Bazzle* case law in which courts uniformly held that "silent" arbitration agreements forbid class arbitration.

13. The Arbitrator further employed presumptions against the School. The Arbitrator equated a contract's "silence" with "unknown rights" and supposed "ambiguity" and, from that, employed a presumption against the School as the drafter of the agreement. The Arbitrator also invoked the principle that doubts about arbitration are resolved in favor of arbitration, even while acknowledging that this is a non-issue given that the parties are obviously in an arbitration already. (The School maintained that resolving doubts about arbitration is a much different thing than resolving alleged "doubts" about specific procedures in arbitration—such as class treatment—that the parties did not agree to.)

14. The Arbitrator concluded, "class arbitration is permitted because it was not expressly barred."

## THE ARBITRATOR EXCEEDED HIS AUTHORITY

15. The FAA applies to this case because the School's Enrollment Agreement is "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2; *see Northern Illinois Gas Co. v. Airco Indus. Gases, A Division Of Airco, Inc.*, 676 F.2d 270, 274-75 (7th Cir. 1982) (holding that the FAA applies even with an Illinois choice of law provision in the contract).

16. The FAA directs courts to enforce agreements to arbitrate "in accordance with the parties' agreement." 9 U.S.C. § 4. Courts have interpreted this command as a basic restriction on an Arbitrator's authority. That authority derives solely from the parties' arbitration agreement, and an Arbitrator may not go outside the limits of that agreement or infer powers not expressly provided. *See, e.g., Edstrom Industries, Inc. v. Companion Life Ins. Co.*, 516 F.3d 546, 552 (7th Cir. 2008) (explaining that "because arbitration is a creature of contract, the arbitrator cannot disregard the lawful directions the parties have given them").

17.     In this case, the Arbitrator inferred a procedure for class treatment where none exists. This was not, as the Arbitrator suggested, an inference taken from any ambiguity in actual contract terms, but an inference built on the supposed "silence" of the agreement with respect to class treatment.

18.     Instructively, the Seventh Circuit has settled the issue. In *Champ v. Siegel Trading Co.*, 55 F.3d 269, 275 (7th Cir. 1995), the court held that the FAA makes "silence" wholly inadequate for finding an agreement to arbitrate as a class. The *Champ* court explained, "[s]ince the parties' arbitration agreement does not expressly provide for class arbitration, the district court correctly concluded that it was prohibited from reading such a procedure into these arbitration agreements." Numerous other courts have followed *Champ* in recognizing plain restrictions under the FAA on finding substantial arbitration procedures not expressly provided for in the agreement. *Med Center Cars, Inc. v. Smith*, 727 So. 2d 9, 20 (Ala. 1998) (following *Champ* in concluding that "to require class-wide arbitration would alter the agreements of the parties, whose arbitration agreements do not provide for classwide arbitration"); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728-729 (8th Cir. 2001) (holding that "because the partnership agreements make no provision for arbitration as a class, the district court did not err by compelling appellants to submit their claims to arbitration as individuals"); *see also Stein v. Geonerco, Inc.*, 17 P.3d 1266, 1271 (Wash. Ct. App. 2001) (citing *Champ*); *Johnson v. W. Suburban Bank*, 225 F.3d 366, 377 n.4 (3d Cir. 2000) (observing in dicta that class arbitration "appears impossible…unless the arbitration agreement contemplates such a procedure" (citing *Champ*)).

19.     The Arbitrator erroneously relied on *Bazzle*, but *Bazzle* does not doubt *Champ*'s line of authority. The School's argument for individualized treatment derived from the analysis

7

of three Justices in *Bazzle*, led by Chief Justice Rehnquist, who found the contract language in question clearly incompatible with class arbitration. The contract language provided for the right to choose an arbitrator as to each customer, which could not plausibly be done in a class. This therefore barred class treatment under the FAA. *Id.* at 455-60.

20. A four justice plurality, relied on by the Arbitrator in this case, did not say Justice Rehnquist was wrong, but only that "the answer to this question is not completely obvious." *Id.* at 451. *Bazzle*'s holding boiled down to the narrow finding that the arbitrator, rather than the state court, should have decided the issue, and this merited vacatur of the state court's ruling. *Id.* at 454. In 2006, the Seventh Circuit revisitied the issue and, in examining *Bazzle*'s alleged precedent, concluded, "we cannot identify a single rationale endorsed by a majority of the Court." *Employers Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573, 580 (7th Cir. 2006).

21. On June 15, 2009, the U.S. Supreme Court granted certiorari in the putative class arbitration case, *Stolt-Nielsen, S.A. v. Animalfeeds Int'l*, 2009 WL 803120 (June 15, 2009) (order granting certiorari). The question posed by Petitioners' successful certiorari brief was, "Whether The FAA Permits Imposition Of Class Arbitration Where The Parties' Arbitration Clause Is Silent."

22. While the U.S. Supreme Court's decision in *Stolt* may decide the question nationwide, the *Champ* decision remains the controlling law in the Seventh Circuit. Without express authority to proceed as a class, the Arbitrator <u>could not</u> infer that authority consistent with the FAA and the parties' agreement on the basis of mere silence, and generic presumptions that do not apply. Inserting into the agreement a substantive right to proceed as a class where the parties did not agree to do so exceeded the Arbitrator's authority.

## RELIEF REQUESTED ON PETITION TO VACATE AWARD

The School respectfully requests that the Court vacate the May 11, 2009 Clause Construction Award and find that the operative agreement does not permit class treatment.

Respectfully submitted:

Corinthian Colleges, Inc.

By: ___/s Jason P. Shaffer_____.
    One of their Attorneys

Sheldon T. Zenner
Jason P. Shaffer
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe, Suite 1900
Chicago, Illinois 60661
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

Peter W. Homer
Christopher J. King
HOMERBONNER
The Four Seasons Tower
1441 Brickell Avenue
Suite 1200
Miami, Florida 33131
Telephone: (305) 350-5192
Facsimile: (305) 982-0069