**EXHIBIT B**

BEFORE THE
AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL AND CLASS ACTION TRIBUNAL

In the Matter of the Arbitration Between: )
)
Sheri McCague, on behalf of herself )
and all others similarly situated, )
)
        Claimant, )
)
v. )    AAA Case No. 11 434 01278 08
)
Corinthian Colleges, Inc. d/b/a )
Everest College f/k/a Olympia College, )
)
        Respondent. )
_____)

## PARTIAL FINAL CLAUSE CONSTRUCTION AWARD

This matter is before this Arbitrator pursuant to Rule 3 of the American Arbitration Association ("AAA") Supplementary Rules for Class Arbitrations ("Supplementary Rule") dated October 8, 2003 for a determination whether the application arbitration clause permits the arbitration to proceed on behalf of a class.

There have been multiple submissions by the parties. Claimant filed a Motion for Clause Construction Award; Respondent filed its Clause Construction Brief; and Claimant filed a Reply. At that point, this Arbitrator asked the parties to submit supplemental memoranda addressing five specific questions set forth in a March 2, 2009 email. In accordance with that request, Claimant submitted a Supplementary Memorandum; Respondent submitted a Response (and later an Amended Response); and Claimant submitted a Supplemental Reply. The above briefing occurred between December 2008 and April 2009.

Based upon the parties' submissions, and for the reasons stated below, this Arbitrator concludes that the parties' Arbitration clause permits the arbitration to proceed on behalf of a class under AAA Supplementary Rule 3.

### Claimant's Pending Claims

Claimant's June 2008 Demand For Arbitration asserts claims of misrepresentation made to Claimant and other students in connection with their enrollment in the Dental Assisting Program offered by Respondent at its Burr Ridge, Illinois campus. Claimant also alleges that Respondent failed to provide her and other students in the Dental Program with an appropriate education. Specifically, Claimant alleges that Respondent's personnel misrepresented that: (1) the Dental

EXHIBIT
B

Program was accredited, (2) completing the curriculum would allow students to become Extended Function Dental Assistants, and (3) upon completing the curriculum, students would be HIPAA certified. Claimant alleges that the misrepresentations were material to the students' decisions to enroll, and that she and others reasonably relied upon those representations.

Claimant frames her claims as violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS § 505/1 *et seq.*), the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510/1 *et seq.*), and the Illinois Private Business and Vocational Schools Act (105 ILCS § 425/1 *et seq.*), as well as violations of common-law fraud and/or negligent misrepresentation.

Claimant brings this matter individually and on behalf of others similarly situated. She seeks relief for the class of compensatory damages, punitive damages, treble damages, interest, attorneys' fees and costs, and injunctive relief. Claimant estimates that the class claim exceeds $1 million.

Respondent denies (1) making any misrepresentations, (2) Claimant's reliance, and (3) any damages arising from Respondent's statements. Accordingly, Respondent denies that it violated any of the pleaded statutes or constituted common-law fraud or negligent misrepresentation. Finally, Respondent denies that it failed to provide an appropriate education. Respondent therefore contends that Claimant's claim should be denied in their entirety.

### The Arbitration Clause

Claimant asserts her claim under the provisions of the Enrollment Agreement (the "Agreement") between students and Respondent. The arbitration clause in the Agreement states:

**AGREEMENT TO FINDING ARBITRATION AND WAIVER OF JURY TRIAL**

The student agrees that any dispute arising from my enrollment at Olympia College, no matter how described, pleaded or styled, shall be resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association ("AAA") under its Commercial Rules. The award rendered by the arbitrator may be entered in any court having jurisdiction.

<u>Terms of Arbitration</u>

1. Both student and Olympia College irrevocably agree that any dispute between them shall be submitted to Arbitration.
2. Neither the student nor Olympia College shall file or maintain any lawsuit in any court against the other, and agree that any suit filed in violation of this Agreement shall be dismissed by the court in favor of an arbitration conducted pursuant to this Agreement.

2

3. The costs of the arbitration filing fee, arbitrator's compensation and facilities fees will be paid by Olympia College, to the extent these fees are greater than a Superior Court filing fee.
4. The arbitrator's decision shall be set forth in writing and shall set forth the essential findings and conclusions upon which the decision is based.
5. Any remedy available from a court under the law shall be available in the arbitration.
6. Nothing in this Agreement prohibits the student from filing a complaint with the state regulatory agency.

Procedure for Filing An Arbitration

1. Students are strongly encouraged, but not required, to utilize the Grievance Procedure described in the Catalog, prior to filing an arbitration.
2. A student desiring to file an arbitration should first contact the Olympia College President, who will provide the student with a copy of the AAA Commercial Rules. A student desiring to file an Arbitration should then contact the American Arbitration Association which will provide the appropriate forms and detailed instructions. The student should bring this form to AAA.
3. A student may, but need not, be represented by an attorney at the Arbitration.

As is readily apparent, the arbitration clause is silent with respect to class actions.

AAA Supplementary Rule 3

AAA Supplementary Rule 3 makes this Partial Final Clause Construction Award a first step in any AAA class action proceeding. Supplementary Rule 3 states:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class.

The parties agree that this Arbitrator has jurisdiction to decide this threshold issue. As the Supreme Court stated in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) ("*Bazzle*"), the "question here [of] what *kind of arbitration proceeding* the parties agreed to" is a decision for the arbitrator. *Id.* at 447, 452, 453, 454 (emphasis original).[1]

---

[1] Respondent agrees that Supplementary Rule 3 empowers this Arbitrator to decide this issue, notwithstanding its argument that the arbitration clause only encompassed the AAA Commercial Arbitration Rules. (Brief, pp. 7, 9-10.)

3

Following the issuance of the Clause Construction Award, the arbitrator must stay all proceedings for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or vacate the Clause Construction Award. Supplementary Rule 3 additionally states under what circumstances the arbitration may proceed, depending upon whether judicial review of the Clause Construction Award is sought and a ruling is issued by the court.

AAA Supplementary Rule 3 explicitly instructs the arbitrator to "not consider the existence of these Supplementary Rules" as a factor in rendering a Clause Construction Award. Nonetheless, the question arises as to what Supplementary Rule 3 means by "permits" in the phrase "whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class . . . ."

"Permits" has a wide range of meanings, giving support to both sides for their respective arguments. Black's Law Dictionary alternatively defines it as (1) to consent to formally, (2) to give opportunity for (as "lax security permitted the escape"), and (3) to allow or admit of (as "the law so permits"). (8th Ed., p. 1176.) The first definition seemingly supports Respondent, as Supplementary Rule 3 would then require the arbitration clause to expressly provide for class arbitration. The second definition helps Claimant, particularly since the example indicates that "permits" includes the failure to prevent something. The third definition and its example refers the parties and this Arbitrator to statutes or case law on the subject.

There are also different views from the Supreme Court. Justice Stevens' concurring opinion in *Bazzle* indicates that something is "permitted if not prohibited," whereas the dissent by then-Chief Justice Rehnquist states that a right does not exist if it is not expressed ("do by their terms permit"). 539 U.S. at 454-455. Thus, here too, there is support for both Claimant and Respondent. The parties did not engage in this analysis.

This Arbitrator concludes that under Supplementary Rule 3, "permits" means either allowed as a matter of contract interpretation or based upon a statute or case authority. The parties' respective submissions have intuitively adopted that approach in their arguments.

### The Parties' Positions

Derived from Claimant's initial and supplemental submissions, Claimant contends that the arbitration clause permits class arbitration because: (1) the clause's broad language covering "any dispute," coupled with Respondent's failure to preclude class arbitrations, indicates that class arbitration was intended; (2) such a ruling is consistent with the precedent of prior clause construction awards; (3) class arbitration is the only meaningful vehicle to address these claims, and class-wide procedures are a substantive, rather than a mere procedural, right; (4) even though Claimant's individual claims may be $12,000, that is not so large as to deny class treatment; (5) similarly, Claimant's limited responsibility for the costs of arbitration and potential ability to recover attorneys' fees do not warrant denying class treatment; and (6) the class size satisfies the numerosity requirement for class certification.

4

Based upon its initial and supplemental submissions, Respondent contends that the arbitration clause does not permit class arbitration because: (1) the plain language of the arbitration clause shows an intent to forbid class arbitration, and this Arbitrator may not add terms expanding its scope; (2) the confidential nature of the disputed issues precludes class arbitrations and the resultant sharing of confidential student records and information; (3) Claimant's damages are substantial and therefore can be pursued on an individualized basis; (4) because Respondent pays for most costs of arbitration, and Claimant may be entitled to attorneys' fees, Claimant does not require class action in order to vindicate her or the class claims; and (5) the class may be a class of one because Claimant's misrepresentation claims are unique to her and therefore she does not satisfy the typicality requirements of class certification.

## The Law Applicable To This Analysis

The arbitration clause is not just silent as to class arbitrations. It is also silent as to applicable state law governing this matter, including contract interpretation. However, Claimant (and undoubtedly the rest of the putative class) and Respondent are Illinois residents, and the claims are brought primarily under three Illinois statutes. The parties have based their arguments on primarily Illinois law, and this Arbitrator concludes that Illinois substantive law applies.

## Analysis And Discussion

This Arbitrator concludes that class arbitration is permitted by the arbitration clause under Illinois rules of contract construction, United States Supreme Court precedent on arbitration, and Illinois Supreme Court authority on class arbitrations.

<u>The Precedent Of Other Arbitration Awards</u>. Neither Claimant nor Respondent cited law indicating whether prior AAA clause construction awards should or should not be precedential. Although the clause construction awards cited by Claimant might be precedent if they were confirmed by a court, and therefore became a judgment, neither side has shown whether that is or is not the case.

This Arbitrator concludes that prior unconfirmed clause construction awards have little precedential value for purposes of this Clause Construction Award. Accordingly, it is not necessary for this Arbitrator to determine whether such precedent is apt or distinguishable. Rather this Clause Construction Award is based solely upon this Arbitrator's analysis of the facts and law applicable to the parties' Agreement here. Of course, some of the issues discussed below have previously been addressed by this Arbitrator in other AAA class action proceedings, so it will not be surprising that the conclusions here may overlap with some of those, even if they have not been confirmed by a court.

<u>The Scope Of The "Any Disputes" Clause</u>. This Arbitrator does not agree with Claimant that the "any disputes" language in the arbitration clause was intended to include all procedural mechanisms – such as class action – to process claims. Rather, this Arbitrator construes the "any

5

disputes" clause to mean, as the arbitration clause states, only the pleaded legal grounds upon which the claims are based, such as contract, tort, or statutory violation. Class procedures are different – they are a procedure, not a remedy.

Conversely, this Arbitrator does not agree with Respondent that the clause is narrowed by "the student," "between them," or "this Agreement" language such that arbitration is limited to individual actions brought by one student at a time against Respondent. The majority decision in *Bazzle* gives guidance. The agreement in *Bazzle* also used "parties" and "this contract" in the arbitration clause. 539 U.S. at 448. The majority did not believe, however, that language just meant individualized arbitration. *Id.* at 451. Had the *Bazzle* majority adopted the point that Respondent makes here, there would have been no reason to refer the matter to the arbitrators for contract interpretation. Thus, this Arbitrator concludes that the singular language used in the arbitration clause does not alone preclude class arbitration.

Moreover, where each of the members of the putative class is a party to the Enrollment Agreement, class arbitration is still consistent with the contract's language. A class arbitration still permits the disputes and claims to be arbitrated "between them," and under "this Agreement," albeit on a combined or collective basis. Had Respondent wanted only a one-on-one dispute resolution process, it should have clearly stated – but did not – that arbitration was "just" or "solely" between these parties and not on a collective or consolidated basis.

<u>Application Of Illinois Contract Construction Law</u>. The parties take opposite positions on whether the arbitration clause's silence on class arbitration does or does not mean that it is permitted. Claimant contends that the failure to preclude class arbitration means that it is included; Respondent contends that the clause's silence means that it is not allowed because it was not intended. Stated otherwise, the question is whether it was incumbent upon Respondent to expressly preclude class arbitration at the time when Claimant enrolled in the program in 2006.

This Arbitrator concludes that class arbitration is permitted because it was not expressly barred. This Arbitrator bases this conclusion on various factors. First, a fundamental principle of contract construction is that a contract is to be construed against the drafter where there is ambiguity or uncertainty. Where a contract is silent on an issue, it is fair to construe it so that the drafter loses benefits that it may have been aware of but did not expressly preserve. See *Mastrobouno v. Shearson Lehman Hutton, Inc., et al.*, 514 U.S. 52, 64 (1995), holding that the court would not impute any intent to the non-drafters to give up unknown rights that were not expressly disclosed or discussed in the contract. In other words, the non-drafter gets the benefit of the doubt. *Id.*

Second, established Supreme Court precedent states that if there is any doubt about the scope of arbitrable issues, it should be resolved in favor of arbitration. *Bazzle, supra*, at 452; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Of course, the precise issue here is not whether there should be arbitration, but rather what kind of arbitration. *Bazzle* at 452. Nonetheless, this Arbitrator believes that the principle of resolving doubts in favor of

arbitration applies equally to the type of arbitration, particularly where (as discussed below) denying class arbitration may impair the rights of the students who also signed the Agreement to get relief.

Finally, *Bazzle* also shows that Respondent could have precluded class arbitration because class arbitration was a known possibility when Claimant signed the Agreement in 2006. Indeed, *Bazzle* itself was decided in 2003, clearly signaling countrywide that arbitrators would be dealing with class arbitrations. In other words, Respondent had notice of its drafting responsibilities to preclude class claims if that was its desire.

Nonetheless, this is not the essential reason for the decision here.

The Confidentiality Issue. Respondent posits that each student's educational records and information are entitled to confidential treatment under federal law, and class arbitration would improperly publicize that information. However, the Agreement already permits the parties to share that student information with an arbitrator. In any event, no such information is being disclosed at this clause construction phase. If the problem ripens at the merits stage, necessary protections can likely be put in place. Moreover, if the class is certified, notice to the class can make reference to this issue. Students would have the right to opt out under AAA Supplementary Rule 6(b)(5), and their failure to do so could be deemed consent to share their information as part of these proceedings.

Permitting Claimant And Class To Vindicate Their Rights. This is the most challenging issue in this analysis. It is the issue that spawned the Arbitrator's request for supplemental memoranda. It is also the outcome-determinative issue here.

In *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 857 N.E. 2d 250 (2006), the Illinois Supreme Court addressed the unconscionability of a class action waiver where claims were brought under, among other theories, the Illinois Consumer Fraud And Deceptive Business Practices Act. In an extensive discussion of substantive unconscionability, the Court concluded that, under certain circumstances, the right to seek class-wide redress is a substantive right, not just a procedural device. 223 Ill. 2d at 41. The factors that the Court considered in holding that the class action waiver in *Kinkel* was substantively unconscionable, included: (a) the nature of the claims and whether a party will be aware of them and be able to present a case based upon them without the aid of an attorney, (b) whether the Respondent is required to advance arbitration fees and costs, (c) whether the Illinois Consumer Fraud Act expressly barred class arbitration (it does not),[2] (d) whether the contract is a contract of adhesion, and (e) how the amount of the claim compares to the costs of pursuing the claim. *Id.* at 29-30, 35, 42-43.

The Court's comments that are applicable here include:

---

[2] Nor does the Illinois Private Business and Vocational Schools Act preclude class actions. Thus, those statutes, like the Agreement, are silent as to class actions. Guidance from the case law is therefore necessary to see what it permits.

7

- A class action waiver will not be upheld if the arbitration agreement is "burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner."

- "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."

- Class action waivers should not be upheld where "provisions operate together to create a situation where the cost of vindicating the claim is so high that the plaintiff's only reasonable cost-effective means of obtaining a complete remedy is as either the representative or a member of a class."

- Enforceability of a class action waiver must be determined on a case-by-case basis, considering "the cost of vindicating the claim relative to the amount of damages that might be awarded under the dispute resolution provisions of the contract." *Id.* at 41-43.

Granted, those were comments in the context of a class action waiver, but they apply to the issue here of whether, under these circumstances, a class proceeding becomes a substantive right.

In *Kinkel*, the comparison of the damages to the cost of recovery was stark, as the class representative's and other class members' claims were only $150, and the respondents did not agree to advance any arbitration costs or fees. 223 Ill. 2d at 7, 9. More recently, *Kinkel* has been discussed or applied in *Bess v. DirecTV, Inc.*, 381 Ill. App. 3d 229, 885 N.E. 2d 488 (5th Dist. 2008), and *Harris v. DirecTV Group, Inc. and DirecTV, Inc.*, 2008 WL 342973 (N.D. Ill. 2008). *Bess* held that an arbitration provision was not substantively unconscionable where the respondent agreed to pay some or most of the AAA costs and expenses. *Harris* held that a class action waiver was valid because individually pursuing the small claim (less than $1,000) was still not cost prohibitive where respondent agreed to pay the costs of the arbitration proceeding and claimant brought claims under a federal statute that had a mandatory fee-shifting provision.

But the facts here do not fall squarely within *Kinkel*, *Bess* or *Harris*. Here, Claimant concedes that her and the putative class members' claims "are approximately $12,000," and the parties' arbitration clause requires Respondent to pay all costs of the arbitration proceeding (including filing fee, arbitrator's compensation, and facilities fees) that exceed the cost of filing a Circuit Court lawsuit. In other words, Claimant's and the class claims are significantly more than those in either *Kinkel* or *Harris*, and the Respondent's contributions to the arbitration costs here may be higher than in either *Bess* or *Harris*. Based upon just that claim/cost comparison, this Arbitrator could find that the cost of vindicating the claim is not so high as to make class arbitration the only reasonable cost-effective means of obtaining a complete remedy. *Kinkel* at 42.

8

But the need for counsel must also be considered under *Kinkel*. The nature of the claims here are such that class members are not likely to recognize, let alone successfully argue in court or arbitration, their claims without the aid of an attorney. Accordingly, the expenses associated with having counsel also seem relevant to this claim/cost analysis. Indeed, Claimant's attorneys' fees expense could likely far exceed the arbitration costs payable by Respondent. Here, both the Illinois Consumer Fraud Act and the Illinois Private Business and Vocational Schools Act have fee-shifting provisions, but both are discretionary. Similarly, AAA Commercial Rule 42(d) makes an award of attorneys' fees discretionary even if the statute permits it. In other words, there is no certainty that Claimant would be awarded attorneys' fees even if she prevailed in an individual claim. Moreover, if she did not prevail, it is certain that (depending on the fee arrangement) she or her attorneys would have to shoulder the attorneys' fees expense.

Notably, neither *Kinkel* nor *Bess*, both cases dealing with Consumer Fraud Act claims, considered the recovery of attorneys' fees as part of the "cost" side in the claim/cost dichotomy. Perhaps that is because the fees are discretionary; perhaps that is because they would only be recovered if successful, but not if unsuccessful. Nonetheless, in applying the *Kinkel* tests set forth above, whether attorneys' fees are recoverable does impact the answer as to whether the Claimant's ability to obtain complete relief is "limited" or "not economically feasible" unless brought as a class action. (*Kinkel* at 24-25.)

Moreover, *Kinkel* and *Bess* did not consider other possibly significant costs for a potentially complex consumer fraud action – costs for depositions and court reporters, experts, and photocopying. While those would likely not reach the level of either the arbitration costs or Claimant's attorneys' fees, those litigation-related costs could still be in the thousands of dollars, a significant percentage of the base $12,000 claim. *Moreno v. DFG Foods, LLC*, 2003 WL 21183903 at *10 (N.D. Ill. 2003). Moreover, these are not the types of "costs" that can be shifted to Respondent. *Wigginton v. Dell, Inc.*, 382 Ill. App. 3d 1189, 890 N.E. 2d 541, 548-549 (5th Dist. 2008), applying *Kinkel* to strike a class action waiver where individual Consumer Fraud Act claims were only $500, noted that attorneys' fees and "the cost of obtaining necessary evidence" must be considered in the claim/cost analysis.

Thus, considering the full range of "costs," the question boils down to whether Claimant would pursue, or some attorney would pursue, Claimant's individual statutory and common law claims for $12,000 where Respondent paid all of the arbitration costs but none of the litigation expenses, and there was a possibility of a recovery of attorneys' fees if Claimant prevailed.

Of course, whether a claimant would pursue an individual case, or an attorney would pursue an individual case for a claimant, under those economic parameters will also be influenced by the potential likelihood of success. Notably, *Kinkel* does not say that it must be "impossible" to find counsel; rather, the test is only whether the claim/cost tension creates a burden that limits the pursuit of a remedy, and renders that pursuit less feasible.

9

Applying the *Kinkel* tests, this Arbitrator concludes that, unless the likelihood of success is very high, it is doubtful whether Claimant could find a reasonably skilled attorney who would handle her $12,000 case on an individualized basis given the costs profile stated above. Thus, even given the size of Claimant's and the class members' individual claims, and considering that Respondent would pay all arbitration costs, Claimant's ability to obtain a complete remedy is still limited, may not be economically feasible, and may not be reasonably cost-effective unless a class action process is employed.[3]

This last aspect of the entire clause construction analysis is a very close question. On balance, however, guided by the overall tests set forth in *Kinkel*, this Arbitrator concludes that Claimant's and the class members' claims would not have a realistic likelihood of being vindicated unless a class action proceeding was employed.

Therefore, a class action process is a substantive right here under Illinois case law. As such, Illinois law permits, and indeed requires, it in this case. The legal test under AAA Supplementary Rule 3 is therefore satisfied.

## Conclusion

For the foregoing reasons, this Arbitrator finds that under AAA Supplementary Rule 3, the parties' arbitration clause permits this arbitration to proceed on behalf of a class.

This matter is stayed for 30 days to permit any party to move a court of competent jurisdiction to confirm or vacate this Partial Final Clause Construction Award. No later than June 22, 2009, counsel shall notify this Arbitrator by joint letter if such action has or has not been taken, and, if taken, the status of the matter before the court. Also, if any party wants this Arbitrator to further stay these proceedings, such motion and supporting argument shall be made no later than June 26, 2009. Any response or opposition to such motion shall be submitted by July 10, 2009.

I, Stuart M. Widman, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Partial Final Clause Construction Award.

Stuart M. Widman, Arbitrator

Dated:      May 11, 2009

---

[3] As an alternative to class arbitration, joinder of 10 to 20 schoolmates as co-claimants is possible. Such a process would incentivize a lawyer to take the case, as it would closely replicate the economics of a class proceeding. Arguably, then, class arbitration is not the "only" reasonable cost-effective means to effect a remedy here. But this Arbitrator has doubts whether corralling that many classmates is reasonably possible. Issues of class size will be addressed later in the class certification stage.

10