**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Corinthian Colleges, Inc. d/b/a | ) | |
| Everest College f/k/a Olympia College, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 09-cv-04899 |
| v. | ) | |
| | ) | Hon. Matthew F. Kennelly |
| Sheri McCague, on behalf of herself | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Respondent. | ) | |
| ——————————————— | ) | |

**RESPONDENT'S OPPOSITION TO**
**PETITION TO VACATE ARBITRATION AWARD**

Sheri McCague ("Respondent") respectfully submits the following as her Opposition to the Petition to Vacate Arbitration Award ("Petition") filed by Corinthian Colleges, Inc. d/b/a Everest College f/k/a Olympia College ("Petitioner" or "the School").

**INTRODUCTION**

The Petition is the School's second attempt to set aside the May 11, 2009 Clause Construction Award ("Award") entered by Arbitrator Stuart M. Widman in the underlying arbitration proceedings. The Award held, as a matter of contract interpretation, that Respondent could seek to pursue her claims against the School on a class basis. Unable to persuade the Arbitrator to stay the proceedings indefinitely pending the Supreme Court's eventual decision in Stolt-Nielsen, S.A., *et al.* v. AnimalFeeds International Corp., Docket No. 08-1198, Petitioner now argues that the Arbitrator exceeded his arbitral authority in entering the Award in the first place.

-1-

As explained below, the Petition fails on three independent grounds, any of which is, alone, sufficient to require dismissal: (1) the School failed to satisfy the statutory prerequisite of timely service; (2) the subject matter of the Petition is not ripe for judicial review; and (3) even if these outcome-determinative deficiencies could be overcome, the Petition fails to show any actionable error by the Arbitrator.

<u>ARGUMENT</u>

**I.    <u>The School Failed to Satisfy the Statutory Precondition of Timely Service of Notice</u>**

As a threshold matter, the Petition must be dismissed because Petitioner failed to timely serve Respondent or her counsel with notice of it as required by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*., and the Local Rules of this Court.

Section 12 of the FAA (9 U.S.C. § 12) states that:

> Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. [...]

Timely service is not a mere technicality; it is a prerequisite to contesting an award. "We clarify now and for purposes of future cases that *service* of a motion to vacate is the act that stops the three-month statute of limitations." <u>Webster v. A.T. Kearney, Inc.</u>, 507 F.3d 568, 572 (7th Cir. 2007) (emphasis in original). It is well established that "[a] party to an arbitration award who fails to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award." <u>ARCH Development Corp. v. Biomet, Inc.</u>, Nos. 02 C 9013, 03 C 2185, 2003 WL 21697742, *3 (N.D. Ill. July 30, 2003) (Zagel, J.), *quoting* <u>Piccolo v. Dain,</u>

Kalman & Quail, Inc., 641 F.2d 598, 600 (8th Cir.1981).  "Accordingly, if a party fails to serve

notice of its court filing on the adverse party within three months after the award was issued, the

motion must be dismissed as untimely."  Id.  This rule "applies even if the motion to vacate was

filed with the court within the three-month period."  Id.

Section 12 of the FAA dictates that service of a motion to vacate "be made upon the

adverse party or his attorney as prescribed by law for service of notice of motion in an action in

the same court."  Local Rule 5.3(a) sets forth the acceptable methods of service of a motion in

this District:

> Except in the case of an emergency or unless otherwise ordered, written notice of
> the intent to present a motion, or an objection to a magistrate judge's order or
> report under F.R.Civ.P. 72, specifying the date on which the motion or objection
> is to be presented, a copy of the motion or objection and any accompanying
> documents must be served as follows:
>
> (1)  *Personal service*.  Personal service must be accomplished no later than 4:00 p.m.
>      of the second business day preceding the date of presentment.  Personal service
>      shall include actual delivery within the time specified by this section by a service
>      organization providing for delivery within a specified time (*e.g.*, overnight
>      service) or by electronic transmission pursuant to F.R.Civ.P. 5(b)(2)(D) and
>      5(b)(3).[1]
>
> (2)  *Mail service*.  Where the service is by mail, the notice and documents shall be
>      mailed at least five business days before the date of presentment.

Here, the Award was filed May 11, 2009 and delivered to the parties electronically on

May 13, 2009.  (Attached Exhibit A.)  Thus, service of the notice of Petition, and the Petition

itself, was due no later than August 11, 2009 (two business days before the August 13, 2009

---

[1]  Rule 5(b)(2)(D) provides that service may be made by "leaving it with the court clerk if the person has
no known address" while Rule 5(b)(3) permits service by "the court's transmission facilities ... under
Rule 5(b)(2)(E)."  Rule 5(b)(2)(E), in turn, allows service "by electronic means if the person consented in
writing — in which event service is complete upon transmission, but is not effective if the serving party
learns that it did not reach the person to be served."

filing deadline, as per Local Rule 5.3(a)(1)).  The following time line shows that Petitioner did

not satisfy this statutory precondition of timely notice.

*August 11, 2009*

Petitioner's counsel e-mailed to the AAA the Petition and a cover letter providing "notice

to the AAA of its filing of [the Petition]."  (Attached Exhibit B (e-mail and letter only; copy of

Petition omitted)).  Petitioner copied Respondent's counsel on this e-mail but did <u>not</u> identify the

transmission as one being made to provide *Respondent* with the notice required under the FAA

and Local Rules.  In any event, this e-mail did not effect proper service because neither

Respondent nor her counsel had previously agreed in writing to accept electronic service of the

Petition, which is required under Federal Rules of Civil Procedure 5(b)(2)(E) and 5(b)(3) and

Local Rule 5.3(a) for electronic service to be effective.[2]

*August 12, 2009*

Petitioner's counsel e-mailed to Respondent's counsel copies of the CM/ECF notice e-

mails confirming the filing of the Petition, the civil cover sheet, and Petitioner's local counsel's

appearance.  (Attached Exhibit C).  This e-mail and its attachments did not constitute proper

service of the Petition because they were untimely, failed to provide copies of the referenced

documents and, like the August 11 e-mail, because there was no consent to electronic service.

*August 14 and 18, 2009*

On August 14 – several days after expiration of the August 11 service deadline –

---

[2]  Although Respondent's counsel agreed to accept electronic delivery of communications in connection
with the *underlying* *arbitration*, pursuant to the AAA's expedited case management program, it never
agreed (or was to agree) to accept electronic service of the Petition.  And, of course, Respondent's
counsel did not receive electronic service from the Clerk (attached Exhibit B) because, until Respondent
authorized counsel to accept service of the Petition, she had no counsel in the case to serve.

Petitioner's counsel sent Respondent's counsel an e-mail in which it acknowledged that "we have yet to serve Sheri McCague with process in the action we filed in the Northern District of Illinois seeking to vacate the interim arbitration award. We would like to avoid causing her a disruption, and thus would prefer to serve you. So please let us know whether you are authorized to accept service on her behalf." (Attached Exhibit D). In an August 18 e-mail, Petitioner's counsel reiterated the request. The next day, having received Petitioner's permission to accept service on her behalf, her counsel agreed to do so. (Attached Exhibit E).

*August 25, 2009*

Finally, on August 25, Petitioner's counsel served Respondent by sending a copy of the Petition to her counsel via overnight courier. (Attached Exhibit F (letter and summons only; copy of Petition omitted)). The cover letter confirmed Petitioner's agreement that "by accepting service Ms. McCague has not waived any rights she might have with respect to the timeliness of the petition or any other jurisdictional issues." With receipt of the Petition on August 26, 2009 – fifteen (15) days after expiration of the statutory time limit – Respondent's counsel was properly served.

As the above time line clearly illustrates, Petitioner did not serve Respondent with appropriate notice of the Petition within the three-month time period mandated by the FAA. The fact that Petitioner filed its Petition within that time period is of no moment. *See* ARCH Development Corp., 2003 WL 21697742 at *3. Petitioner's failure to satisfy the statutory precondition of timely notice warrants dismissal of the Petition with prejudice, and this Court need look no further for a basis to do so. *See* Sanders-Midwest, Inc. v. Midwest Pipe Fabricators, Inc., 857 F.2d 1235, 1237 (8th Cir. 1988) (noting that "the district court was barred

from considering [petitioner's] application to vacate the award because [petitioner] failed to comply with the statutory precondition of timely service of notice.")

## II.    **This Court Lacks Subject Matter Jurisdiction Over the Dispute**

There is a second, independent, reason to dismiss the Petition: the issues it presents are not ripe for judicial determination.  The Sixth Circuit's recent analysis of a strikingly similar fact pattern in <u>Dealer Computer Servs., Inc. v. Dub Herring Ford</u>, 547 F.3d 558 (6th Cir. 2008), is highly instructive.  There, as here, the arbitrators found that the subject arbitration clause's silence on the issue of class arbitration meant that the claimants could attempt to proceed on a class basis.  There, as here, the drafter of the arbitration clause (DCS) sought to vacate the clause construction award on the grounds that the arbitrators had exceeded their authority.  After the district court denied DCS's motion to vacate the award and a subsequent motion for reconsideration, DCS appealed to the Sixth Circuit.

The appellate court noted that DCS's appeal presented a "threshold issue" of ripeness. 547 F.3d at 560.  As the court put it,

> The ripeness doctrine focuses on the timing of the action.  It is more than a mere procedural question; it is determinative of jurisdiction.  If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.  Ripeness draws both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.  Enforcing ripeness requirements discourages "premature adjudication" of legal questions and judicial entanglement in abstract controversies.  Thus, the doctrine serves as a bar to judicial review whenever a court determines a claim is filed prematurely.

547 F.3d at 560-61 (internal citations omitted).

The court then recited the three factors traditionally considered in a ripeness analysis: "(1) the likelihood that the harm alleged by the party will ever come to pass; (2) the hardship to the

parties if judicial relief is denied at this stage in the proceedings; and (3) whether the factual record is sufficiently developed to produce a fair adjudication of the merits." Id. at 561.[3] Finding the third factor met, the court focused its analysis on the first two factors.

Looking at the first factor, the court noted that "the AAA panel's [clause construction] ruling did not conclusively determine that Dealers' claims *should* proceed as a class arbitration" but rather only that the arbitration clause permitted the claimants (collectively referred to by the court as "Dealers") to seek class status. Id. at 561. The court observed that "it remains far from certain that the arbitration panel will certify Dealers' claims for class arbitration" and that, by extension, "the harm feared by DCS in defending against a class arbitration may never come to pass." Id. at 562. The court reasoned that since the motion to vacate was "anchored in future events that may not occur as anticipated, or at all, the likelihood of harm factor strongly weighs against finding the Clause Construction Award ripe for review." Id. (internal citations omitted).

Turning to the potential for hardship that might be imposed by a lack of judicial review, the court noted that, even if Dealers were ultimately successful in seeking class certification, under the appeal procedures specified in the AAA rules, DCS would have "ample opportunity to obtain judicial review of any arguments it may have against class arbitration, including those challenging the soundness of the arbitration panel's prior Clause Construction Award." 547 F.3d at 562. Thus, the court concluded that DCS would not "suffer any material hardship if review is withheld at this preliminary stage of arbitration." Id. at 563. Combining this analysis with its

---

[3]  Identical factors have been cited in controlling Seventh Circuit and Northern District of Illinois ripeness decisions. *See, e.g.,* Triple G Landfills, Inc. v. Board of Com'rs of Fountain County, Ind., 977 F.2d 287, 288-290 (7th Cir. 1992); Hometown Co-op. Apartments v. City of Hometown, 515 F. Supp. 502, 504-05 (N.D. Ill. 1981) (Aspen, J.).

earlier finding of no imminent harm to DCS, the court concluded that DCS's petition to vacate the clause construction award was not ripe for adjudication, and remanded the case to the district court with instructions to dismiss for lack of jurisdiction. Id. at 564.

There is no reason to reach a contrary result here. If anything, the balance here tips even more in favor of Respondent, since the sole basis upon which Petitioner's argument rests – the speculative possibility of a favorable outcome in a Supreme Court case that has not yet been fully briefed or scheduled for oral argument, let alone decided – is a perfect illustration of a future event that may not occur as anticipated. Likewise, there is no identifiable material hardship to Petitioner at this point since it presumably would have the right to seek judicial review of any class certification award that might be entered in favor of Respondent in the arbitration, consistent with the provisions of the governing AAA rules. Indeed, the Petition itself fails to identify any source of material harm other than its reference to the attorneys' fees and other costs the School will be forced to bear to proceed in arbitration – costs that occur in any action that proceeds over the objection of a party. Because the Petition rests on speculative events and identifies no material hardship to the School at this point, the Petition should be dismissed in its entirety for lack of subject matter jurisdiction.

## III.    The Arbitrator Did Not Exceed His Authority In Entering the Award

Finally, the School has not shown (as it must) that the Arbitrator exceeded his arbitral authority in making the Award. The judicial "scope of review of a commercial arbitration award is grudgingly narrow." Eljer Mfg., Inc. v. Kowin Dev. Corp., 14 F.3d 1250, 1253 (7th Cir. 1994). See also Prostyakov v. Masco Corp., 513 F.3d 716, 723 (7th Cir. 2008) (courts "do not – and will not – review arbitral awards for legal or factual error"); Rich v. Spartis, 516 F.3d 75, 81 (2d Cir.

2008) ("An arbitration award should be enforced, despite a court's disagreement with it on the

merits, if there is a 'barely colorable justification for the outcome reached'").  The only issue

proper for judicial examination is whether "the arbitrator interpreted the parties' agreement at

all."  Prostyakov, 513 F.3d at 723 (internal citations omitted).  Examples of circumstances when

review would be appropriate are "when the arbitrators' interpretation was so wacky that it was no

interpretation at all" or "when the arbitrator consciously refused to apply the parties' agreed-upon

choice of law when fashioning the award."  Id. (internal citations omitted).  In short, courts are to

"uphold an arbitral award unless there is no possible interpretive route to it, so a non-contractual

basis can be inferred."  Id.

       Here, the School concedes (as it must) that the Award was based on the Arbitrator's

analysis of the arbitration clause in Respondent's enrollment agreement.  (Petition, at 1).  In fact,

the ten-page Award reveals that the Arbitrator engaged in rigorous and careful analysis of, among

other things: the precedential effect of other arbitration awards; the scope of the arbitration

clause's "any disputes" language; state and federal law on arbitration contract construction

issues; confidentiality issues; and class arbitration as a substantive versus a procedural right.

(See Exhibit B to Petition, pp. 5-10).  Each subject is obviously germane to the clause

construction dispute, and it was proper for the Arbitrator to examine and analyze them

individually and collectively in making the Award.

       To the contrary, the School's argument that the Arbitrator erred in not following the

Seventh Circuit's decision in Champ v. Siegel Trading Co., 55 F.3d 269 (1995), does not support

judicial review under the standard memorialized in Prostyakov.  The School was free to (and did)

raise Champ in support of its position against class arbitration in the briefings before the

Arbitrator. Respondent, for her part, cited multiple countervailing authorities (including <u>Bazzle</u> and related Illinois authorities) showing why <u>Champ</u> was inapplicable and why the School's choice of language for its arbitration clause permitted class arbitrations. The Arbitrator's decision to follow Respondent's authorities rather than Petitioner's is one that lies well within the powers granted to him by the parties. Put simply, Petitioner's disagreement with the Arbitrator's decision does not transform the Award into an impermissible exercise of arbitral authority.

In the end, the record clearly shows that the Arbitrator carefully analyzed the provisions of the arbitration clause and the pertinent authorities, and that proves fatal to Petitioner's claim under Section 10(a)(4) of the FAA.

## <u>CONCLUSION</u>

For the foregoing reasons, Respondent respectfully requests that this Court enter an order dismissing the Petition with prejudice and awarding her any other relief it deems appropriate.

Dated: October 23, 2009                          Respectfully submitted,

                                                 SHERI MCCAGUE

                                                 By:____/s/ Scott G. Golinkin____
                                                    One of Her Attorneys

Scott G. Golinkin
Eric J. Marler
REARDON GOLINKIN & REED
111 W. Washington St., Suite 707
Chicago, Illinois 60602
312/855-3700

## <u>CERTIFICATE OF SERVICE</u>

TO:     **<u>VIA U.S. MAIL</u>**                        **<u>VIA U.S. MAIL</u>**

        Peter W. Homer                        Sheldon T. Zenner
        Christopher J. King                     Jason P. Shaffer
        HomerBonner LLP                      Katten Muchin Rosenman LLP
        The Four Seasons Tower                 525 West Monroe Street
        1441 Brickell Avenue                    Suite 1900
        Suite 1200                           Chicago, Illinois 60661
        Miami, Florida 33131

        *Lead Counsel for Petitioner*            *Local Counsel for Petitioner*


        I, Scott G. Golinkin, Marler, certify that on October 23, 2009, I electronically filed the foregoing **Respondent's Opposition to Petition to Vacate Arbitration Award** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the above-named parties thereby serving the same upon them, and additional hard copies by the means indicated above.


                                           /s/ Scott G. Golinkin